UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| IMPACT AUTOMATION, INC. <br> 9305 Gerwig Lane, Suite T <br> Columbia, MD 21046 <br><br> *Plaintiff*, <br> v. <br><br> MATTHEW A. HAAS <br> 2022 Northbrook Drive <br> Lancaster, PA 17601 <br><br> and <br><br> LEWCO, INC. <br> d/b/a LogistiQ Solutions <br> 706 Lane Street, <br> Sandusky, OH 44870 <br><br> Serve on: Ronald L. Guerra, <br>          Registered Agent <br>          706 Lane Street, <br>          Sandusky, OH 44870 <br><br> *Defendants*. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | Civil Action No.: |

\* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

Plaintiff Impact Automation, Inc. ("Impact" or "Plaintiff"), by and through undersigned counsel, files this Complaint against Defendants Matthew A. Haas ("Haas") and LEWCO, Inc. ("LEWCO") (collectively, "Defendants"). Impact states as follows:

## The Parties

1. Impact is a Maryland corporation with its principal place of business located at 9305 Gerwig Lane, Suite T, Columbia, Maryland.

2. Haas is a resident of the commonwealth of Pennsylvania. He is a LEWCO employee and a former employee of Impact.

3. LEWCO is an Ohio corporation with its principal place of business at 706 Lane Street, Sandusky, Ohio 44870.

## Jurisdiction

4. Pursuant to 28 U.S.C. § 1332, this Court has subject matter jurisdiction over the claims in this action as the amount in controversy exceeds $75,000 and there is complete diversity between the proper parties.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Impact's primary office is in Maryland; the effects of Haas's wrongful conduct occurred, and continue to occur, in Maryland; and the contract between Haas and Impact was entered into in Maryland and provides that Maryland law governs the agreement.

6. Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant LEWCO conducts business in this judicial district and the effects of Defendants' intentional interference with the contract consummated in Maryland between a Maryland employer and their employee occurred, and continue to occur, in this judicial district.

7. This Court has personal jurisdiction over Haas under Maryland's Long Arm Statute. Haas worked monthly in Maryland during the period he was employed with Impact and, when not working in person in the state, had frequent contact with Impact employees and customers located in Maryland. Haas also agreed to be bound by Maryland law in the Intellectual Property, Confidentiality, Noncompete, and Nonsolicitation Agreement he signed upon hire with Impact.

8. This Court has personal jurisdiction over LEWCO under Maryland's Long Arm Statute. On information and belief, LEWCO delivered equipment and material to customers in Maryland, including Amazon. On information and belief, LEWCO employees and agents, at the direction and in furtherance of LEWCO's interests, have and continue to supply products and services to Amazon in Maryland, which include consultive communications with Amazon personnel, through electronic and other means, regarding their products and services, for which it derives substantial revenue.

9. This action is timely commenced within all applicable statutes of limitations.

10. There is no unperformed condition precedent to the bringing of this action by Impact.

### Factual Allegations

11. Haas was hired by Impact as an Installation Manager on September 6, 2022.

12. Haas voluntarily agreed to the Intellectual Property, Confidentiality, Noncompete, and Nonsolicitation Agreement ("Agreement") upon hire. **Exhibit 1**.

13. Hass was involved, directly or indirectly, in all of Impact's projects, which span 45 different states.

14. Haas was the only Installation Manager with Impact and was directly involved as the point of contact for all Amazon work for Impact.

15. Haas's duties as the point of contact included troubleshooting and resolving customer issues, ensuring timely completion of each project, and developing and solidifying the relationship with the customer on behalf of Impact.

16. Haas was onsite with customers to facilitate the automation of their conveyer systems. When not onsite, in Maryland and throughout the United States, Haas would act as

the intermediary between the customer, the subcontractors, and suppliers, through electronic and other communications.

17. Haas was also the point of contact for subcontractors and suppliers. He managed their work in conjunction with that of Impact to ensure timely completion of each project and built and maintained relationships with such subcontractors and suppliers for the benefit and on behalf of Impact.

18. Haas was entrusted with Impact's confidential information and directly managed the installation process for customers, including Amazon, using Impact's confidential information.

19. Haas was present in Impact's home office in Maryland as needed, but at least twice per month for meetings with Impact. When not present in Maryland, Haas was in regular contact with Impact's corporate office in Maryland, often speaking and corresponding with staff located at the Maryland office.

20. In June 2023, Impact revised the Installation Manager duties at Haas's insistence to provide Haas more autonomy to manage projects with Impact's customer base, including Amazon.

21. Haas stated at or around June 2023 that LEWCO had tried to hire him from Impact, and he was reminded of his obligations under the Agreement by Impact.

22. Haas resigned from Impact on July 13, 2023.

23. Haas began working for LEWCO shortly after leaving Impact and prior to the expiration of the post-employment covenants in the Agreement.

24. LEWCO and Haas were notified by undersigned counsel on or about August 2, 2023, that Haas was in breach of the Agreement.

25. Counsel representing both LEWCO and Haas responded on or about August 11, 2023, confirming that Haas is employed by LEWCO as a Senior Field Project Manager.

26. After his employment with Impact and while employed by LEWCO, Haas has been on phone calls between Amazon, LEWCO, and Impact concerning conveyer and automation work at Amazon facilities.

27. The Agreement permits Impact to seek remedies in case of a breach "including, but not limited to, recovery from Employee of damages and reasonable attorneys' fees incurred in the enforcement of this Agreement," and "Impact shall have the right to injunctive relief to restrain and enjoin any actual or threatened breach of any section of this Agreement."

## COUNT I – Breach of Contract
### (Haas)

28. The foregoing paragraphs of this Complaint are incorporated by reference as if set forth herein.

29. Haas voluntarily agreed to the Agreement upon hire.

30. Impact provided consideration for the Agreement through Haas's employment and compensation.

31. The Agreement's noncompete covenant provides:

> Impact is engaged in the business of designing, manufacturing, marketing, servicing, and selling conveyer systems and factory automation. During the term of my employment with Impact, I will not undertake any activities (side work) that are directly or indirectly competitive with Impact's business as set forth in this paragraph.
>
> For a period of one year from the voluntary or involuntary termination of my employment with Impact, I will not directly or indirectly solicit, agree to supply products, or perform services

which are similar to those distributed, sold, or provided by Impact to the Impact customer base (end users).

32. The Agreement's non-solicitation covenant provides:

For a period of one year after the voluntary or involuntary termination of my employment with Impact for any reason whatsoever, I will not (directly or indirectly, either individually or on behalf of any other person or entity) a) solicit for employment or contract, attempt to hire, or hire any person, who, as of the date of termination of employment, is employed by Impact, nor b) solicit, induce, or attempt to induce any impact customer to cease doing business in whole or in part with or through Impact.

33. The Agreement's confidentiality covenant provides:

I agree that I will not, during my employment by Impact, or thereafter at any time, disclose to others or use for my own benefit any trade secrets or confidential information pertaining to any business of Impact or any of its customers, representatives, agents, consultants, licensees, or affiliates, acquired by me during the period of my employment, except to such an extent as may be necessary in the ordinary course of performing my particular duties as an employee at Impact.

34. Confidential information is defined in the Agreement to include:

All information and/or data relating to my work at Impact, including but not limited to, designs, charts, models, notes, drawings, specifications, schematics and engineering, sales, marketing and financial plans, studies and reports, tape recordings, videotapes, films, photographs, computer tape, computer disks, computer programs, and any other data of every description, prepared, compiled, or acquired by me during the course of my employment with Impact.

35. LEWCO is a competitor of Impact. The August 11, 2023 letter from LEWCO's and Haas's Counsel states, "[t]he companies compete as to a product called ADTA (Auto Divert to Aisle)," and "Here, the e-commerce and parcel industry served by Impact and LEWCO has only a very few large end-user customers, in this case, Amazon."

36. After leaving Impact's employment on July 13, 2023, Haas breached his noncompete covenant when he began working at LEWCO as a Senior Field Project Manager within the one-year period stated within the noncompete covenant.

37. Haas provides similar, if not identical, services for LEWCO to those services he provided while employed as an Installation Manager with Impact.

38. On information and belief, Haas has and continues to provide competitive products and services in his role as Senior Field Project Manager to Impact's customer base, including Amazon.

39. On information and belief, Haas, on behalf and for the benefit of LEWCO, used or attempted to use his goodwill and rapport developed while employed with Impact to solicit Impact's customer base, including Amazon, in violation of his non-solicitation covenant.

40. On information and belief, Haas used and disclosed Impact's confidential information, including but not limited to client and supplier lists, designs, specifications and engineering, and sales, which he obtained during his employment with Impact, for the benefit of himself and LEWCO, and to the direct detriment of Impact and in violation of the confidentiality covenant.

41. Impact has suffered and will continue to suffer damages as a result of Haas's breach of the Agreement, including lost revenues and lost clients.

WHEREFORE, Impact requests that this Court: (a) enter judgment for compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00) in favor of Impact and against Haas and interest as may be caused by virtue of the improper

conduct as alleged herein; (b) award Impact its reasonable attorneys' fees, interest and costs; and (c) award such other relief as the Court deems just and proper.

## COUNT II
## Tortious Interference with Contractual Relationship
### (LEWCO)

42. The foregoing paragraphs of this Complaint are incorporated by reference as if set forth herein.

43. Haas agreed to the covenants within the Agreement upon hire with Impact and was reminded of the covenants prior to his resignation from Impact and employment by LEWCO.

44. LEWCO was notified on August 2, 2023, that Haas was in breach of his Agreement and was provided with a copy of the Agreement signed by Haas.

45. LEWCO has intentionally interfered with Impact's Agreement with Haas through its hire of Haas with the purpose to use the confidential information he obtained while employed with Impact to gain an unfair advantage, suppress competition, and solicit their clients.

46. On information and belief, Haas, with the support and encouragement of LEWCO, has and continues to violate the covenants within the Agreement.

47. The actions described above have and will continue to cause Impact injury, including lost profits, lost transactions with current clients, lost revenues, other consequential damages, and damage to the reputation and goodwill of Impact, for which Impact has no adequate remedy at law.

WHEREFORE, Impact requests that this Court: (a) enter judgment for compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00) in favor of Impact and against LEWCO and interest as may be caused by virtue of the improper

conduct as alleged herein; (b) award Impact its reasonable attorneys' fees, interest and costs; and (c) award such other relief as the Court deems just and proper.

        Respectfully submitted,

        */s/*   Darrell R. VanDeusen
        Darrell R. VanDeusen, #08231
        Mathew L. Moldawer, #30579
        Kollman & Saucier, P.A.
        The Business Law Building
        1823 York Road
        Timonium, MD 21093
        (410) 727-4300 – Phone
        (410) 727-4391 - Fax
        dvand@kollmanlaw.com
        mmoldawer@kollmanlaw.com

        *Attorneys for Plaintiff*